UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
THE PENN MUTUAL LIFE INSURANCE
COMPANY,                                                     :    Case No. 09 CV 7023-LMM

                                        Plaintiff,     :
                                                                  **DEFENDANT JACQUELINE M.**
                -v-                                          :    **HUDKINS' REPLY MEMORANDUM OF**
                                                                  **LAW IN FURTHER SUPPORT OF**
JACQUELINE M. HUDKINS, as trustee of the                     :    **MOTION FOR PARTIAL SUMMARY**
2007 CHARLOTTE DEMARIA                                            **JUDGMENT**
IRREVOCABLE TRUST; CHARLOTTE                                 :
DEMARIA; and LISA GARN DEMARIA,
                                                             :
                                        Defendants.
                                                             :
------------------------------------------------------------ X

      Defendant Jacqueline M. Hudkins, as trustee of the 2007 Charlotte DeMaria Irrevocable Trust (the "Trust"), by its attorneys Greenberg Traurig, LLP, respectfully submits this reply memorandum of law in response to The Penn Mutual Life Insurance Company's ("Penn Mutual" or "Plaintiff") Opposition to Motion for Partial Summary Judgment (the "Opposition") and in further support of its Motion for Partial Summary Judgment (the "Motion").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | **Penn Mutual Has Condeded to the Dismissal of Count II** | 1 |
| B. | **Count I Must Be Dismissed As Moot** | 2 |
| C. | **Because the Policy is Void Ab Initio, Penn Mutual Should Return the Premiums** | 3 |
| | 1.  **Under New York Law, The Trust is Entitled to a Return of the Premiums** | 3 |
| | 2.  **Other Jurisdictions Follow the Same Principles as New York** | 5 |
| | 3.  **The Cases Cited by Penn Mutual are Inapposite** | 6 |
| | 4.  **Penn Mutual Has Not Offered Sufficient Evidence to Prove Fraud Against the Trust** | 8 |
| D. | **Count III Must Be Dismissed** | 8 |
| | 1.  **Penn Mutual Cannot Amend Its Complaint in its Opposition** | 8 |
| | 2.  **Penn Mutual Concedes It Has No Evidence That Garn Was the Trust's Agent** | 9 |
| | 3.  **Penn Mutual Concedes It Has No Evidence That Garn Committed Fraud** | 11 |
| | 4.  **Penn Mutual Cannot Rely on Joint Liability** | 11 |
| | 5.  **Penn Mutual Is Not Entitled to Seek Attorneys' Fees** | 12 |

A.  **Penn Mutual Has Conceded to the Dismissal of Count II**

Under Count II, Penn Mutual seeks a declaration that the Policy[1] is void or voidable for lack of an insurable interest, based on the allegation that the Policy involves a "stranger originated life insurance" or "STOLI" scheme. D.E. 1, ¶¶ 8, 72-6. Specifically, Penn Mutual contends that the Policy lacks insurable interest because, at the time the Application was submitted, the Insured and the Trust intended to transfer the Policy to the STOLI investors, *i.e.*, the "true owners." *See e.g., id*. ¶¶ 39-40, 70.

However, Penn Mutual's STOLI theory was squarely rejected in *Kramer v. Phoenix Life Ins. Co.,* 940 N.E.2d 535 (N.Y. 2010), where the court held that an insured may obtain a policy with the intent of immediately assigning it and may even have a pre-arrangement with a stranger investor, without running afoul the insurable interest requirements in New York law. *Id*. at 541 (law "does not prohibit an insured from obtaining a policy pursuant to a non-coercive arrangement with an investor"). Thus, an arrangement like the one alleged by Penn Mutual is legal in New York. As Penn Mutual admits that the Insured "applied to Penn Mutual" for the Policy (D.E. 1 ¶ 20)[2] and there is no allegation or record evidence of coercion by any so-called STOLI investor, Penn Mutual's allegations of lack of insurable interest and of a "STOLI scheme" are without merit. Moreover, it is undisputed that the Trust has always been the Policy owner (D.E. 51/54 at ¶ 7) and the beneficiary of the Trust has always been the Insured's son (D.E. 51/54 at ¶ 2), who has an insurable interest in the life of the Insured.

Penn Mutual did not address this argument, and has therefore conceded that Count II of the Complaint has no merit and that its "STOLI scheme" arguments are incorrect as a matter of New York law. Thus, the Court should dismiss Count II and wholly disregard Penn Mutual's STOLI arguments.

---

[1] Unless otherwise stated, capitalized terms are defined in the Motion for Summary Judgment.
[2] Also, it is undisputed that she actively participated in creating the Trust, filling out and signing the Application, and that she took out the policy to benefit her family. *See, e.g.*, Charlotte DeMaria Dep. Tr. 93:7-11; 98:4-13; 166:18-167:4.

1

**B.**     <u>**Count I Must Be Dismissed as Moot**</u>

Penn Mutual contends that the Trust's consent to the rescission of the Policy did not render the declaratory judgment action moot, because it is "legally distinct from a rescission action." D.E. 53 at 10. It further claims that to avoid placing the parties in their "precontractual state," it seeks a declaration that the Policy is "void." *Id.* at 10-11. However, Penn Mutual cites no case under New York law or opinions from courts sitting in New York in support of its contentions. The reason is evident: the applicable cases support a finding that the declaratory judgment has been rendered moot.

First, the fact that Penn Mutual chose to file a declaratory action vis-à-vis a rescission action does not do away with the mootness argument. "A litigant may not use the declaratory judgment statute to secure judicial relief of moot questions." *Christopher P. v. Marcus,* 915 F.2d 794, 802 (2d Cir. 1990). Where "the remedy sought [by the plaintiff] is a mere declaration of law ***without implications for practical enforcement upon the parties***, the case is properly dismissed as moot." *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir. 1975) (emphasis added). This is true even where, as Penn Mutual asserts, there may be remaining questions alive—such as claims for damages. *Stokes v. Village of Wurtsboro*, 818 F.2d 4 (2d Cir. 1987) (declaratory claim was moot, even if damages claim remained viable); *Harrison & Burrows Bridge Const., Inc. v. Cuomo*, 1991 WL 197049 (N.D.N.Y. Oct. 1, 1991).

Here, the consented rescission of the Policy has eliminated any need for a declaratory judgment regarding the Policy's validity. To be sure, a declaration by the Court that the Policy is void or voidable —for whatever reason— will not have any "implications for practical enforcement" between the parties, rendering the issue moot. This is supported by the Second Circuit's decision in *Westport Ins. Corp. v. Nat'l City Warehouse Resources*, 399 Fed. Appx. 607 (2d Cir. 2010). There, while the plaintiff's declaratory judgment action to rescind a policy was pending, the defendant entered into an

2

agreement that "resulted in rescission of the policy." The Court dismissed the declaratory judgment action, ruling that once the defendant "accepted the policy as void *ab initio,* the controversy upon which the present suit was based became moot." 399 Fed. Appx. at 609.

Second, contrary to what Penn Mutual contends, an action seeking a declaration that the Policy is void or voidable *ab initio* is not "legally distinct" to a rescission action. In *Mut. Ben. Life Ins. Co. v. JMR Elec. Corp.*, 848 F.2d 30, 32 (2d Cir. 1988), for example, an insurer brought an "action seeking a declaration that the policy [at issue there was] void" for material misrepresentations. The court affirmed this Court's judgment *ordering the rescission* of the insurance policy, explaining that New York law "allow[s] the insurer to avoid the contract of insurance" for material misrepresentations. *Id.*; *see also Kiss Construction NY, Inc. v. Rutgers Casualty Ins. Co.*, 61 A.D.3d 412 (1st Dep't 2009) (in action by insurer seeking declaration that policy was void *ab initio* based on the material misrepresentations, court declared policy void *ab initio*).

In sum, the relief sought by Penn Mutual to declare the Policy is void *ab initio* has already resulted from the consented rescission. *See also Moller v. Tuska,* 9 Daly 207, 1881 WL 13137, 2 (N.Y. 1881) (upon rescission, a "contract [i]s at an end"); *County of Orange v. Grier*, 817 N.Y.S.2d 146, 147 (2 Dep't 2006) (effect of rescission "is to declare the contract void from its inception and to put or restore the parties to *status quo*"). As such, there is nothing for this Court to declare void or voidable; there is thus no controversy between the parties that allows the Court to effect a declaratory relief as requested by Penn Mutual.

**C.** **Because the Policy is Void *Ab Initio*, Penn Mutual Should Return the Premiums**

*1.*   *Under New York Law, The Trust is Entitled to a Return of the Premiums*

Penn Mutual admits that it "purposefully" sought to circumvent the legal consequences of avoiding the Policy by "not styl[ing] this solely as an action for rescission." D.E. 53 at 10. However,

3

courts will not allow parties to circumvent the law. *See, e.g., Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir. 1997) (refusing to allow party to circumvent the law by asserting claim for the purpose of seeking a remedy not otherwise available); *Cubas v. Martinez*, 819 N.Y.S.2d 10, 22 (1st Dep't 2006) ("It is not a permissible judicial function to assist a party to circumvent the law").

Moreover, the New York Court of Appeals has held that where an "insurer has been successful in declaring the policy void" and of "no effect," the insurer is obligated to return the premiums received. *LaRocca v. John Hancock Mut. Life Ins. Co.,* 286 N.Y. 233, 238 (1941). ***This is true even where the insured claims fraud***. *Harris v. Equitable Life Assur. Soc*, 64 N.Y. 196, 199 (1876) ("where a party seeks to disaffirm a contract upon the ground of fraud he is bound to...return, or offer to return, all that he has received under the contract...a man shall not keep what he has obtained under a fraudulent contract, and then claim that it shall be rescinded without any return"). This was recently confirmed by the First Department. *Kiss Construction,* 61 A.D.3d at 412 (in action where insurer alleged fraud, court held that insurer was "obligated to refund the premium payments" upon the declaration that policy was "void *ab initio*").[3]

Federal courts sitting in New York have consistently followed this well-settled rule. In *Mut. Ben. Life Ins.*, for example, the Second Circuit affirmed this Court's judgment ordering the rescission of the insurance policy and the return of the premium payments, with interest. 848 F.2d at 32. Similarly, in *Berger v. Manhattan Life Ins. Co*., 805 F. Supp. 1097 (S.D.N.Y. 1992), the Court held that when an insurer sues to rescind a policy for fraud or lack of insurable interest, it must return the premiums. *See Chicago Ins. Co. v. Kreitzer & Vogelman*, 2000 WL 16949 (S.D.N.Y. Jan. 10, 2000)

---

[3] Penn Mutual claims there is a rule existing "for more than two hundred years" in New York that "persons who engage in insurance fraud are estopped from seeking a return of premium when a policy is declared void." D.E. 53 at 13. In support thereof, it cites *Mincho v. Bankers' Life Ins. Co.,* 124 A.D. 578 (1st Dep't 1908), purportedly from "New York highest court." *Mincho*—which is not from the Court of Appeals nor is it 200 years old, but a First Department 1908 decision—is inapposite, as it involved an action by an insured to reform a policy and not by an insurer to avoid a policy, a significant distinction. *See infra.* In any event, Penn Mutual fails to address the First Department's 2009 opinion in *Kiss Construction* and the Court of Appeals opinions in *LaRocca* and *Harris*, which require the return of the premium, regardless of fraud.

(upon rescission of a policy, insurer must return premium and other payments received, plus interest).

Consequently, as a matter of New York law, this Court must find that Penn Mutual is required to return to the Trust the premiums paid to it, plus interest accrued.

## 2.  *Other Jurisdictions Follow the Same Principles as New York*

Several state supreme courts have held that insurers who sue to avoid a policy obtained by fraud must return all the premiums received. *See, e.g., Prudential Ins. Co. of Amer. v. Smith,* 231 Ind. 403 (Ind. 1952) (if a defrauded insurer "elects to affirm the transaction, he has his remedy by way of damages. If he elects to rescind, he must return back what he has received"); *Glockel v. State Farm Mut. Auto. Ins. Co.,* 400 N.W.2d 250 (Neb. 1987) (a defrauded insurer can either rescind the policy and return "the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy"); *see also MetLife Ins. Co. v. Freedman,* 123 N.W. 547 (Mich. 1909) (in action by insurer to rescind policy as obtained by fraudulent misrepresentations, court ruled that insurer must return premiums); *N.J. Rubber Co. v. Comm. Union Assur. Co. of London, Ltd.,* 46 A. 777 (N.J. Err. & App. 1900) (same);[4] *Grand Lodge of Bhd. of R.R. Trainmen v. Clark,* 127 N.E. 280 (Ind. 1920) (same); *Nat'l Life Ins. Co. v. Hanna,* 7 S.E.2d 52, 53 (W.Va. 1940) (same); *Great Amer. Reserve Ins. Co. of Dallas v. Strain,* 377 P.2d 583 (Ok. 1962) (upon rescission of a policy, premium must be returned); *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829 (Idaho 2002) (statute allowing insurer to avoid a policy for fraud in the application does not abrogate common law requirement for insurer to return the premiums if it seeks rescission); *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268 (Ala. 1993).

This rule has been followed by federal and lower state courts around the nation. *See, e.g., PHL Variable Ins. Co. v. Robert Gelb Irrevocable Trust,* 2010 WL 4363377 (N.D. Ill. Oct. 27, 2010)

---

[4] The court that issued this opinion, the Court of Errors and Appeals, was New Jersey's highest court at the time. *Strawbridge v. New York Life Ins. Co*., 504 F. Supp. 824, 826 (D.N.J. 1980).

5

(striking request to retain premiums as damages where insurer sought rescission of policy); *Sun Life Ass. Co.v. Berck,* 719 F. Supp. 2d 410 (D. Del. 2010) (in case against trust alleging STOLI scheme, court held that insurer cannot seek rescission and premiums); *Gonzalez v. Eagle Ins. Co.,* 948 So.2d 1 (Fla. 3d DCA 2006) (insurer who seeks to rescind policy for fraud must return premium); *Stiegler v. Eureka Life Ins. Co.,* 127 A. 397 (Md. Ct. App. 1925) (same); *Diaz v. Florida Ins. Guar. Ass'n, Inc.,* 650 So.2d 675 (Fla. 3d DCA 1995) (same); *Nat'l Life & Acc. Ins. Co. v. Wigley,* 96 S.W.2d 154 (Tex. Civ. App. 1936) (same); *Nat'l Council of Knights & Ladies v. Walton,* 136 N.E. 25 (Ind. App. 1922) (same); *Caldwell v. City of New York Ins. Co.,* 245 S.W. 602 (Mo. App. 1922) (same).

Thus, if this Court is to consider the decisions rendered in other jurisdictions, it should follow these well-settled precedents, all of which confirm the rule that an insurer like Penn Mutual is *required* to return the entire premium (plus interest) as a necessary consequence of its decision to sue to avoid the policy.

## 3.     *The Cases Cited By Penn Mutual Are Inapposite*

Penn Mutual claims there exists a "general principle" that "has been applied almost uniformly" which is that "an insurer [i]s permitted a set-off for its costs against any return of the premium." D.E. 53 at 13. However, of the four cases cited by Penn Mutual in the body of its brief to support this proposition, the only published one is *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009), which is completely inapposite as it involved a suit filed by the owner of certain policies (and not the insurer) seeking rescission and return of the premium. The court refused to rescind the policies and ruled that ***an insured*** who commits fraud ***cannot sue*** to recover premiums. The other three cases cited in the text of the brief are all unpublished dispositions with no precedential value.[5] As such, Penn

---

[5] The other cases cited in the body of the brief are: *Principal Life Ins. Co. v. DeRose,* 1:08-CV-2294 (M.D. Pa. July 15, 2011), a report and recommendation not yet adopted; *PHL Variable Ins. Co. v. Clifton Wright Family Ins. Trust,* 2010 WL 1445186 (S.D. Cal. Apr. 12, 2010), an unpublished disposition under California law; and *PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irr. Trust,* 2010 WL 2539755 (D. Minn. Mar. 3, 2010), an unpublished disposition under Minnesota law.

Mutual does not nearly address what it calls a "general principle" of law applied "almost uniformly." **More importantly, not one of these cases is consistent with the cited decisions of the New York Court of Appeals or of any court sitting in New York, for that matter.** Thus, the Court must reject Penn Mutual's invitation to ignore the applicable law based on these opinions.

The other cases cited by Penn Mutual (in a footnote) are also inapposite, as they all involve actions by insureds or their heirs seeking return of the premium or benefits under a policy—and not a rescission actions by an insurer.[6] However, at least two of these cases clearly explain that a different rule will apply depending on who is the party seeking court intervention. Under the first rule, an insured is barred from suing an insurer to seek the return of the premiums if there was fraud in the procurement of the policy. Under the second rule—which is the one applicable here—*an insurer who sues seeking rescission is **required** to return the premiums paid, **even if there is fraud***.

In *Hellman,* for example, although the court held that an insured had no standing to sue to recover premiums paid, the court confirmed the rule that the insurer who sues

> seeking to cancel a contract for fraud in its procurement must return the benefits received thereunder . . . [*H*]*ad* [*the insurer*] *come into a court of equity seeking affirmative equitable relief, . . . in order to foreclose the question of liability on the certificate, it would have been compelled to return the premiums*.

200 S.W. at 699-700 (emphasis added). Similarly, in *Mulkey,* the court held that the rule that an insurer does not need to return the premiums to raise the defense of fraud against a claim for proceeds under a policy "is essentially different from that held by a party who seeks to rescind a contract on the ground of fraud." 91 S.E. at 107.

---

[6] The additional cases are: *Hellman v. Nat'l Council of Knights & Ladies*, 200 S.W. 698 (Mo. App. 1918) (action by insured); *Fisher v. Met. Life Ins. Co.*, 35 N.E. 849 (Mass. 1894) (same); *Ray v. U.S.*, 121 F.2d 416 (7th Cir. 1941) (same); *Columbian Nat'l Life Ins. Co. v. Mulkey*, 91 S.E. 106 (Ga. 1916) ("*Mulkey*") (same); *Nat'l Mut. Fire Ins. Co. v. Duncan,* 98 P. 634 (Colo. 1908) (same); *Himely v. South Carolina Ins. Co.*, 1817 WL 669 (S.C. Const. 1817) (same); *Hamilton v. United Ins. Co. of Amer.*, 428 So. 2d 346 (Fla. 1 DCA 1983) (same); *Modern Woodsmen of Amer. v. Int'l Trust Co.,* 136 P. 806 (Col. App. 1913) (action by heirs of insured); *Bosse v. Knights & Ladies of Security*, 220 S.W. 993 (Mo. App. 1920) (action by insured citing *Freedman,* which held that insurers suing to rescind on the basis of fraud must return premiums).

In short, the cases cited by Penn Mutual confirm the well-established rule that an insurer who sues to avoid a policy must return the premiums received. As Penn Mutual initiated this case seeking a declaration that the Policy is void or rescinded, it must return the premiums.

### *4.   Penn Mutual Has Not Offered Sufficient Evidence to Prove Fraud Against the Trust*

Two of the four essential elements of fraud in New York are (1) knowledge as to the falsity of the representations and (2) intent to deceive. *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308 (1995). Penn Mutual has not offered an iota of evidence that the Trust (or its trustees) knew of the alleged falsity of the representations made to Penn Mutual. Thus, the Trust (and its trustees) could not intend to deceive Penn Mutual. *E*TRADE Fin. Corp. v. Deutsche Bank AG,* 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009) ("In order to show an intent to deceive, plaintiffs must establish that defendant knew, at the time they were made, that the representations were false"). Thus, even assuming Penn Mutual could legally offset its alleged damages by retaining the premiums (which it cannot), it has failed to create an issue preventing summary judgment on that question. *Celotex Corp. v. Cattret,* 477 U.S. 316, 324 (1986) (moving defendant does not have to offer evidence to negate plaintiff's claims, but plaintiff must "go beyond the pleadings" and offer evidence "showing that there is a genuine issue for trial").

### D.   Count III Must be Dismissed

### *1.   Penn Mutual Cannot Amend Its Complaint in its Opposition*

Count III of the Complaint clearly and unequivocally asserts a claim against "Ms. Garn, acting on behalf of the DeMaria Trust and/or Ms. DeMaria," based on the "material misrepresentations [made] to Penn Mutual in the Agent's Underwriting Report [the "Report"] concerning the source of funds for the premiums payments and the intent to transfer the DeMaria Policy into the secondary market." D.E. 1 ¶ 78. To be certain, the claim is based ***exclusively*** on these specific representations by "Ms. Garn, acting on behalf of the DeMaria Trust and/or Ms. DeMaria" in her Report. *Id.* ¶ 79-81.

Apparently becoming aware that this is unsupported by the evidence, Penn Mutual is now seeking to amend its Complaint in several substantive ways, including with new theories of liability. For example, Penn Mutual is now claiming (1) that the alleged misrepresentations upon which Count III is based were made in the *application* for insurance by the Trust and the Insured (rather than in the Report); D.E. 53 at 18-9; (2) that the misrepresentations included the Insured's financial and medical information (which are not included in the Report); *id*. at 6, 18; (3) that the defendants failed to satisfy a condition precedent to insurance; *id*. at 21; (4) that the defendants breached their good faith duty to update the information after the Policy was placed in force; *id*. at 20; and (5) that the Trust is a jointly liable for the acts of Garn and the Insured under "concerted action liability" principles. *Id.* at 17.

However, Penn Mutual did not seek leave to amend the complaint, as required by Fed. R. Civ. P. 15(a)(2). Further, Penn Mutual cannot "switch gears" in opposing the summary judgment motion to raise for the first time claims and theories that were not alleged in the complaint. *Lyman v. CSX Transp., Inc.,* 364 Fed. Appx. 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims") (quoting *5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1183). Citing *Lyman*, this Court recently refused to allow a plaintiff to proceed on a theory of liability that "would effectively amend the complaint at the summary judgment stage." *Seeman v. Gracie Gardens Owners Corp*., 2011 WL 2555857, 5 (S.D.N.Y. June 27, 2011). Penn Mutual's improper litigation tactic is even more egregious considering that Penn Mutual repeatedly complains that the Trust is "misinterpreting" its claims, which are now moving targets. Thus, the Court should completely disregard Penn Mutual's belated attempts to amend the Complaint.[7]

2.  ***Penn Mutual Concedes That It Has No Evidence That Garn Was the Trust's Agent***

The gravamen of Count III is that Garn made the above-mentioned fraudulent representations

---

[7] If the Court grants leave to amend the Complaint, the Trust reserves the right to address the new claims and allegations as permitted under the Federal Rules of Civil Procedure, including seeking the dismissal of the Amended Complaint.

in the Report as the Trust's "and/or" the Insured's agent. However, Penn Mutual cannot show the elements necessary under New York law to establish that Garn was acting as the Trust's agent, because (1) there is no evidence of a "manifestation of the [Trust] that [Garn] act[ed] for [the Trust]," (2) there is no evidence of "[Garn's] acceptance of the undertaking," *and* (3) there is no evidence of an "understanding" between Garn and the Trust "that the [Trust] [wa]s to be in control of the undertaking." *Manley v. Ambase Corp.,* 337 F.3d 237, 246 (2d Cir. 2003). On the contrary, the undisputed record evidence demonstrates that Garn was *not* acting on behalf of the Trust, as Garn did not receive any instructions from the Trust in connection with the Report. D.E. 51/54 ¶ 19.

In the Opposition, Penn Mutual chose not to address this and has therefore conceded the lack of evidence on essential elements necessary to prove Count III *against the Trust.* "[W]hen facts relied upon to establish the existence of an agency are undisputed, and conflicting inferences cannot be drawn therefrom, the question of the existence of the agency is one of law and should be determined by the court." *G.D. Searle & Co. v. Medicore Comm., Inc.*, 843 F. Supp. 895, 905 (S.D.N.Y. 1994) (citations omitted). That, in turn, has rendered all other facts regarding Count III immaterial for purposes of the Trust.[8] "[*A*] ***complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.*** The moving party is [thus] "entitled to a judgment as a matter of law" on Count III. *Celotex,* 477 U.S. at 322-3 (emphasis added).

---

[8] This includes facts relating to Penn Mutual's claim (raised also for the first time) that Garn was Penn Mutual's broker and that, as such, she was acting "as agent of the insured," Ms. DeMaria. D.E. 53 at 23. Assuming Penn Mutual can raise that claim at this juncture, *there is no record evidence to support a finding that Garn was **the Trust's** agent,* which warrants dismissal of the claim against *the Trust*. Moreover, there is also no record evidence to support the claim that Garn was Penn Mutual's broker. The allegations by Penn Mutual's attorneys do not amount to evidence. *Celotex*, 477 U.S. at 323 (claimant is required "to go beyond the pleadings" to avoid summary judgment). Penn Mutual also claims that Garn was not "authorized to sell life insurance that violated applicable law or Penn Mutual's directives [or] to provide false information in the application process." D.E. 53 at 24. However, Penn Mutual did not offer any evidence in support thereof and has admitted that Garn did not know about the falsity of statements made by her. D.E. 51/54 at ¶ 17. Even "if the agent acted outside the scope of his authority, the principal is nevertheless liable if he later ratifies the fraudulent acts and retains the benefits derived from them," as Penn Mutual has done by retaining the premiums. *Adler v. Helman*, 169 A.D.2d 925, 926 (3 Dep't 1991).

### 3. *Penn Mutual Concedes That It Has No Evidence That Garn Committed Fraud*

Penn Mutual admits that Garn did not know the falsity of the representations made in the Report. D.E. 51/54 at ¶ 17. Thus, as in the case of the Trust, Penn Mutual also cannot prove that Garn intended to deceive Penn Mutual. *E*TRADE Fin.,* 631 F. Supp. 2d at 387. This is fatal to Count III, as assuming that the representations made by Garn could be imputed to the Trust (which is not the case), Penn Mutual has conceded that it cannot prove fraud.

### 4. *Penn Mutual Cannot Rely on Joint Liability*

In New York, a party may be held jointly liable with another when it acts "concurrently or in concert to produce a single injury." *Ravo by Ravo v. Rogatnick*, 70 N.Y.2d 305, 309-10 (N.Y. 1987). In the Complaint, Penn Mutual did not allege that the Trust either acted concurrently or in concerted action with any of the codefendants. In the Opposition, however, Penn Mutual claims for the first time that the Trust's liability is based on the theory of "concerted action liability." D.E. 53 at 17. More specifically, it claims that the Trust was "an active participant in the underlying fraud" and that it "cooperated in the fraud and adopted the acts of its co-Defendants." *Id.* This improper attempt to amend the Complaint belatedly and without leave must be rejected by the Court. *See supra.*

Assuming that Penn Mutual may assert this new theory of liability, it is nevertheless unavailing. The elements of concerted-action liability are (1) an agreement "to participate in a common plan or design to commit a tortious act," (2) "tortious conduct by each defendant," *and* (3) "the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." *Pittman by Pittman v. Grayson,* 149 F.3d 111, 123 (2d Cir. 1998). Further, if a plaintiff claims conspiracy or "aiding and abetting," as Penn Mutual has here, it must show that the defendant "know[s] the wrongful nature of the primary actor's conduct." *Pittman,* 149 F.2d at 123; *see also Sahu v. Union Carbide Corp.*, 746 F. Supp. 2d 609, 615 (S.D.N.Y. 2010) (same).

There is not even a scintilla of record evidence to support an agreement between the Trust and *anyone* regarding the alleged fraud. There is also no record evidence whatsoever to support a finding that the Trust (or its trustee) knew the wrongful nature of any alleged wrongdoer's conduct or that the Trust engaged in tortious conduct. Therefore, Penn Mutual's claim of joint liability must be squarely rejected. *Celotex,* 477 U.S. at 323 ("the nonmoving party [is required] to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'") (citations omitted).

### 5.     *Penn Mutual Is Not Entitled to Seek Attorneys' Fees*

Penn Mutual claims that "it is not barred from recovering attorneys' fees as part of its damages." Opposition at 16. However, the decisions of the U.S. Supreme Court, the Second Circuit and the New York Court of Appeals unambiguously compel the application of the American Rule, which requires each party to bear its own fees. *See, e.g., Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners,* 456 U.S. 717 (1982); *U.S. Fid. and Guar. Co. v. Braspetro Oil Servs. Co.,* 369 F.3d 34 (2d Cir. 2004); *Chapel v. Mitchell,* 84 N.Y.2d 345, 349 (N.Y. 1994) ("in the absence of any pertinent contractual or statutory provision with respect to the recovery of amounts expended in the successful prosecution or defense of an action, each party is responsible for its own legal fees.").[9] Thus, Penn Mutual is not entitled to seek fees as damages.[10]

**WHEREFORE**, Plaintiff respectfully requests this Court to issue summary judgment dismissing the Complaint and directing Penn Mutual to return to the Trust the entire amount of the premiums it received under the Policy, plus interest.

---

[9] There is "a narrow exception," which is involved in the cases cited by Penn Mutual, "where recovery is sought from a third-party wrongdoer." *Hunt v. Sharp*, 85 N.Y.2d 883, 885-6 (N.Y. 1995). However, the exception is not available where, as here, the alleged wrongdoer is "the same as the claimant's opponent in the main action." *Id*.

[10] Penn Mutual does not address the argument raised in the Motion that commissions paid to its own agents are not recoverable as damages or that it is not legally entitled to seek from the Trust the return of the agents' commissions. Therefore, because the argument was conceded, the Court must refuse to grant commissions as damages.

Respectfully submitted,

Dated: September 19, 2011

                                              GREENBERG TRAURIG, PA
*Attorneys for Defendant Jacqueline M. Hudkins, as trustee of the 2007 Charlotte DeMaria Irrevocable Trust*

By: /s/ Jesus E. Cuza
     /s/ Brian H. Koch

| | |
|---|---|
| PHILIP H. COHEN | JESÚS E. CUZA |
| GREENBERG TRAURIG, LLP | Admitted Pro Hac Vice |
| 200 Park Avenue | JON SWERGOLD |
| New York, New York 10166 | Admitted Pro Hac Vice |
| Telephone: (212) 801-9200 | BRIAN H. KOCH |
| Facsimile: (212) 801-6400 | Admitted Pro Hac Vice |
| | GREENBERG TRAURIG, P.A. |
| Ina M. Berlingeri (Of Counsel) | 401 East Las Olas Blvd., Suite 2000 |
| BerlingeriI@gtlaw.com | Fort Lauderdale, Florida 33301 |
| GREENBERG TRAURIG, P.A. | Telephone: (954) 765-0500 |
| 401 East Las Olas Boulevard, Suite 2000 | Facsimile: (954) 765-1477 |
| Fort Lauderdale, Florida 33301 | |
| Telephone: (954) 765-0500 | |
| Facsimile: (954) 765-1477 | |